CENTRAL NATIONAL BANK OF CLEVELAND ET AL., TRUS-
TEES, APPELLEES, *v.* THE NEWTON STEEL CO.
ET AL.; WEISBERG, APPELLANT.

(Decided March 4, 1937.)

*Messrs. McKeehan, Merrick, Arter & Stewart* and
*Messrs. Hoppe, Lea, Day & Ford,* for appellees.
*Messrs. Harrington, Huxley & Smith,* for defendant,
The Newton Steel Company.

*Messrs. Secrest & Hodge,* for defendant, William O. Williams.

*Messrs. Cookston & Frank* and *Mr. Abraham L. Pomerantz,* for appellant.

NICHOLS, J.   Central National Bank of Cleveland and H. R. Harris, as trustees under the first mortgage and deed of trust of The Newton Steel Company, securing $3,866,000 of 7 per cent bonds now outstanding, filed their petition in the Court of Common Pleas of Trumbull county against The Newton Steel Company to obtain judgment on the bonds and to foreclose the mortgage.   William O. Williams, as Treasurer of Trumbull county, and David Thomas, Clerk of the Common Pleas Court of Trumbull county, were made defendants, the petition alleging that they claim some interest in the mortgaged property and praying that they be required to set up whatever claims or interest they may have, or be forever barred from asserting the same.

On August 1, 1936 (being the answer day named in the summons served upon the defendants), Essie J. Weisberg, by her attorney, Abraham L. Pomerantz, who represents that he is a member of the Bar of the state of New York, filed a motion for leave to intervene as defendant in the action, and tendered with the motion her answer and cross-petition wherein she alleged that she is a stockholder of defendant, The Newton Steel Company, and that she is intervening on behalf of herself and on behalf of all other stockholders of The Newton Steel Company similarly situated, in the right and for the benefit of the steel company.

On the same day, August 1, 1936, The Newton Steel Company filed its answer to the petition of plaintiffs, admitting the execution of the bonds and mortgage, the amounts claimed by the plaintiffs to be unpaid and in default, and admitting the ownership of the property described in the petition, and that plaintiffs, as

trustees, are duly appointed. The answer then alleged that the defendant corporation was unable to pay the principal or interest on the bonds, but asked that if a decree should be entered and the property ordered sold it should be given an opportunity, if then able to do so, to avail itself of the provisions of Section 11588, General Code (the Best Act), and have a sale postponed upon compliance with the conditions set forth within that act. The answer denied all allegations of the petition inconsistent with its prior statements and concluded with a prayer that the interests of The Newton Steel Company and its stockholders be fully protected.

Neither the motion of Essie J. Weisberg to intervene, nor the answer and cross-petition tendered therewith, denied or questioned the validity of the bond issue or the amount of bonds in default, but alleged that subsequent to the issue of the bonds and deed of trust or mortgage securing the same, the Republic Steel Corporation, a corporation under New Jersey laws, acquired and now owns all of the bonds secured by the deed of trust and also owns approximately 80 per cent of the stock of The Newton Steel Company; and further alleged that, by reason of its ownership of such stock of The Newton Steel Company, Republic Steel Corporation controls The Newton Steel Company, designates its directorate and executive officers; and that certain of the officers and directors of The Newton Steel Company are directors or officers of Republic Steel Corporation and receive substantial compensation and bonuses from Republic Steel Corporation.

It is further alleged that by reason of certain understandings and agreements between the directors and officers of the two steel companies it was arranged that The Newton Steel Company would default on the bond issue upon its maturity on January 1, 1935, and that the Republic Steel Corporation would thereupon acquire all of the outstanding mortgage bonds; and,

in substance, it was set forth that the officers and directors of The Newton Steel Company have failed and refused to interpose any defense to the action or to take any steps to prevent the foreclosure sought by plaintiffs; that the net worth of The Newton Steel Company over and above all its obligations, including the bonds secured by the mortgage sought to be foreclosed, exceeded $5,000,000 as of December 31, 1935, and it was requested that, pursuant to Section 11588, of the Ohio General Code (the Best Act), hearing be had and sale of property covered by the mortgage be postponed and proceedings to enforce the debt secured thereby be restrained until such time as the court may believe to be just and equitable.

For a second, separate and distinct affirmative defense, the answer tendered by Essie J. Weisberg repeated the allegations of certain paragraphs of the answer, and further alleged that prior to August, 1933, The Newton Steel Company was engaged in the business of producing cold-rolled sheets for the automobile, refrigerator and other industries; that on or about August, 1932, Corrigan, McKinney Steel Company acquired approximately 75 per cent of all of the outstanding stock of The Newton Steel Company, and thereafter these two companies had interlocking officers and directors, and Corrigan, McKinney Steel Company designated the directorate and policies of The Newton Steel Company; that thereafter and until about September, 1935, the business and affairs of The Newton Steel Company were managed for the benefit of its parent company, Corrigan, McKinney Steel Company rather than for the benefit or in the interest of The Newton Steel Company or its minority stockholders. Further allegations are made to the effect that The Newton Steel Company purchased practically all of its steel and commodity requirements from Corrigan, McKinney Steel Company at a price fixed by the latter and by reason of the

control exercised by the parent company, The Newton Steel Company did not attempt to obtain competitive bids for its steel and commodity requirements; and that accordingly the transactions between these two companies during the years 1932 to 1935 resulted in large profits to Corrigan, McKinney Steel Company and large losses to The Newton Steel Company.

It is further alleged that about the month of August, 1935, Corrigan, McKinney Steel Company entered into written agreements and understandings with the Republic Steel Company whereby Republic Steel Company was to acquire all of the property, assets and liabilities of Corrigan, McKinney Steel Company, including its 75 per cent ownership of stock in The Newton Steel Company, and, pursuant to such agreements and understandings, it was arranged and understood between the Republic Steel Company and Corrigan, McKinney Steel Company, and their respective officers and directors, that The Newton Steel Company would, on January 1, 1935, default on the bonds secured by the mortgage sought to be foreclosed herein, and that thereafter the Republic Steel Company would acquire all of the outstanding mortgage bonds from the public and would be aided and assisted in such acquisition by The Newton Steel Company; that thereafter the Republic Steel Company would commence foreclosure proceedings through which it would acquire all of the assets of The Newton Steel Company, which latter company would make no attempt or effort to prevent or stave off its default on the bond issue; that it did not attempt to borrow moneys for the purpose of paying off the bond issue in whole or in part, and did not attempt to obtain an extension or renewal of the bonds which were, prior to default, held by the public at large; that The Newton Steel Company did not avail itself of the state or federal statutes, and particularly of Section 11588, of the General Code of Ohio (the Best Act), and Section

77b of the National Bankruptcy Act (Title 11, Section 207, U. S. Code), whereunder it could obtain a moratorium or a stay of the foreclosure action pending reorganization.

It is further alleged that, pursuant to concerted plan and understanding, The Newton Steel Company did default on its bond issue on January 1, 1935; that it made no attempt to obtain a renewal or extension thereof or to borrow moneys to pay off the bonds in whole or in part, but aided and assisted the Republic Steel Company in acquiring the entire outstanding issue of bonds after default, and refused to attempt any plan of reorganization, all with the view of driving The Newton Steel Company out of business and thereby "freezing out" its minority stockholders and enabling the Republic Steel Company to acquire all of The Newton Steel Company's assets without interference or delay, "all in fraud" of the minority shareholders of The Newton Steel Company.

It is further alleged that since the acquisition by the Republic Steel Company of the assets of Corrigan, McKinney Steel Company, including the latter's stock interest in The Newton Steel Company, the Republic Steel Company stands in the position of a trustee with respect to the minority shareholders of The Newton Steel Company and that the acts and transactions alleged constitute a breach of trust; and that the present action to foreclose is part and parcel of the purpose and design to defraud the minority stockholders by "freezing them out" of their interest in The Newton Steel Company.

For a cross-petition against the officers and directors of The Newton Steel Company, Essie J. Weisberg repeated and realleged all of the foregoing statements, and further alleged that since the incorporation of The Newton Steel Company in 1929 it has been engaged in the manufacture of sheet steel and has plants located at Newton Falls, Ohio, and Monroe, Michigan;

that such plants have a combined monthly capacity of about 40,000 tons of sheet steel; that its authorized capital stock is 500,000 shares of common stock, of which 261,550 shares are outstanding, and $3,856,500 par value of 6 per cent cumulative preferred A stock, of which $2,585,000 are outstanding, and about $21,000 in its treasury; that as of December 31, 1935, The Newton Steel Company had assets of $12,025,866.39 and its net worth or equity applicable to its shareholders was $5,527,004.16.

It is further alleged that since the year 1932, The Newton Steel Company has done a progressively larger business ranging from gross sales of $3,840,000 in the year 1932 to about $8,000,000 in the year 1935, but "notwithstanding the increase in the business done by Newton, its losses have continued in substantial amount."

Further allegations are made charging the losses of The Newton Steel Company to be due to policies adopted by Corrigan, McKinney Steel Company and the Republic Steel Company through the majority ownership and control of the stock of The Newton Steel Company, whereby it is alleged that the latter company is now unable to successfully compete with the Republic Steel Company. It is further alleged that, by reason of these policies or practices, The Newton Steel Company is faced with extinction of its corporate existence and that its officers and directors are not capable, by reason of the domination and control exercised over them by the Republic Steel Company, of properly managing the affairs of The Newton Steel Company, and of properly attempting to recapitalize or refinance the company with a view to eliminating the necessity of this foreclosure proceeding and reestablishing The Newton Steel Company as a going concern.

It is further alleged that the institution of proceedings under Section 77b of the National Bankruptcy

Act (Title 11, Section 207, U. S. Code), or proceedings for a receivership would involve an extension of time to meet the indebtedness on the bonds secured by the mortgage and allow time for the borrowing of money to pay off these bonds and extend the indebtedness, and that various other measures could be taken which would result in a continuation of the corporate existence and the probable re-establishing of The Newton Steel Company, but that the officers and directors thereof have refused and failed to take any such steps.

It is further alleged that Essie J. Weisberg has heretofore made due demand upon the officers and directors of The Newton Steel Company to take such steps and proceedings as might be necessary or advisable to defend this action and to restrain or postpone foreclosure of the mortgage, and has made due demand upon the Republic Steel Company, as majority stockholder, to discontinue the acts complained of, but that both demands were refused; and that by reason of the conspiracy alleged such demand would in any case be futile.

It is further alleged that Essie J. Weisberg has no adequate remedy at law and it is prayed that the petition of plaintiffs for foreclosure be denied and the petition be dismissed; that if the petition be not denied hearing be had pursuant to Section 11588, General Code, and thereupon the sale of the property be postponed and proceedings to enforce the debt restrained until such time as may be just and equitable and permitted by statute; that the plaintiffs be enjoined from continuing or taking any proceedings to foreclose the mortgage in the state of Ohio, in the state of Michigan, or in any other state; that a receiver be appointed to take over and manage the business and affairs of The Newton Steel Company and to investigate the management and control thereof and the transactions conducted with it by Corrigan, McKinney Steel Company and its successor, the Republic Steel Company,

and to take such steps, actions or proceedings as may be directed or approved by the court; that the court find that the Republic Steel Company be deemed to have made the purchase of the bonds in behalf of The Newton Steel Company at the price paid for the bonds, and that this act is either a payment for the benefit of the corporation or that the acquiring of these bonds results in a merger of title. It is also prayed that, as an alternative, if the foregoing relief be denied, the court issue a writ of mandamus, directed to The Newton Steel Company and its officers and directors, ordering and directing them to file a petition for reorganization pursuant to Section 77b of the National Bankruptcy Act (Title 11, Section 207, U. S. Code), and take proceedings thereunder as may be directed by the court having jurisdiction thereof; that, as an alternative, if all of the foregoing relief is denied, the court declare and decree that the purchase by the Republic Steel Company of the bonds of The Newton Steel Company be impressed with a trust and the Republic Steel Company declared a trustee of such bonds, and. the property of The Newton Steel Company which it may acquire by foreclosure of such mortgage, for the other shareholders of The Newton Steel Company in proportion to their stockholdings in The Newton Steel Company, upon payment of such sums to the Republic Steel Company in proportionate reimbursement of money expended in the purchase of such bonds as the court may determine to be just and equitable. It is also asked that, in addition to any of the foregoing, the Republic Steel Company be ordered and directed to account for all profits made by it or its predecessor, Corrigan, McKinney Steel Company, at the expense of The Newton Steel Company, and all losses caused to The Newton Steel Company by it, and thereupon to pay over such profits to The Newton Steel Company and repair such losses; and that a writ of mandamus issue directing and ordering The New-

ton Steel Company, by its proper officers and directors, to file a petition pursuant to Section 77b of the National Bankruptcy Act (Title 11, Section 207, U. S. Code), and for such other relief as the court may deem just and equitable.

On October 21, 1936, as shown by the journal of the Common Pleas Court, the following proceedings were had:

"This cause came on to be heard on the motion of Essie J. Weisberg for leave to intervene in this action as a defendant and to file an answer and cross-petition on behalf of herself and all other stockholders of defendant, The Newton Steel Company, similarly situated; upon the proposed answer and cross-petition of said Essie J. Weisberg submitted with her said motion and upon the evidence and arguments of counsel, and was submitted to the court. Upon consideration whereof the court finds that said motion should be, and the same hereby is, overruled, and leave to said Essie J. Weisberg to intervene as a party defendant is denied; to which the said Essie J. Weisberg excepts."

Thereafter, on November 6, 1936, the following proceedings were had in the Common Pleas Court, as shown by the following entry upon the journal:

"It appearing to the court on motion of Essie J. Weisberg, by her attorneys, Cookston & Frank and A. L. Pomerantz, that she has a separate and distinct interest herein, and that she intends to appeal from the order rendered against her overruling defendant's 'Motion of stockholder for leave to intervene as defendant and file an answer on behalf of The Newton Steel Company' to the Court of Appeals of this county, it is ordered that the motion, answer and briefs and copies of all papers and pleadings pertaining to said distinct interest be made or certified and filed in the Court of Appeals in case the appeal is perfected."

On November 6, 1936, notice of appeal on questions of law was filed by Essie J. Weisberg in the Common

Pleas Court. The cause is now for hearing in this court on appeal of law from the order of the Common Pleas Court overruling the motion of Essie J. Weisberg for leave to intervene and file answer as a stockholder.

At the outset of the hearing in this court, counsel for appellees moved to dismiss the appeal upon two grounds; first, that no bill of exceptions has been prepared, allowed, signed and filed, it being contended that without a bill of exceptions this court will not be able to pass upon the questions presented; and, second, that the order of the Common Pleas Court overruling the motion of appellant to intervene is not a final order from which an appeal of law can be prosecuted.

We think it well-settled that the failure to file a bill of exceptions is not a ground for dismissal of the appeal, but that this court will be limited upon the hearing herein to a determination of whether error of the trial court appears from the "transcript of the docket or journal entries, with such original papers or transcripts thereof as are necessary to exhibit the error complained of." Section 12223-8, General Code. This section of the General Code further provides that "the transcript of the testimony or bill of exceptions or so much thereof as may be necessary for said appeal may be filed within such time as is provided for in the rules of court." The last quoted language of the section would seem to indicate that a bill of exceptions is required only when necessary to a determination of the appeal.

Section 12223-4, General Code, provides that the appeal shall be deemed perfected when written notice of appeal is filed with the lower court and after being duly perfected, no appeal shall be dismissed without notice to the appellant, and no step required to be taken subsequent to the perfection of the appeal shall be deemed to be jurisdictional.

Section 11564, General Code, provides for the filing of a bill of exceptions "when the decision is not entered on the record, or the grounds of the objection do not sufficiently appear in the entry, or the objection is to the decision of the court on a motion to direct nonsuit, or to arrest the evidence from the jury, or for a new trial for misdirection to the jury, or because the verdict, or if a jury is waived, the finding of the court is against the law and the evidence, or on the admission or rejection of evidence."

The case now before us does not present a situation requiring a bill of exceptions as a condition necessary to the jurisdiction of this court on appeal of law, but upon the hearing of the appeal upon its merits wherein we shall be limited to the determination whether error appears from the transcript of the docket and journal entries, "with such original papers * * * as are necessary to exhibit the error complained of," we will be faced with the question whether the term "original papers" is broad enough to permit the consideration of the motion to intervene, the affidavits in support thereof, and the sworn answer and cross-petition tendered by Essie J. Weisberg with her motion to intervene, this motion, affidavits and answer not having been made a part of a bill of exceptions.

If the order of the Common Pleas Court overruling the motion of Essie J. Weisberg to intervene is not a final order, the motion to dismiss the appeal must be sustained as Section 12223-3, General Code, contemplates that appeal of law may be had only from a "final order, judgment or decree of a court * * *."

Section 12223-2, General Code, (116 Ohio Laws, 104), defines a "final order" as being:

"An order affecting a substantial right in an action, when in effect it determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment."

This section provides that such final order may be reviewed, affirmed, modified or reversed. Does the order of the Common Pleas Court overruling the motion of Essie J. Weisberg to intervene in this action affect a substantial right in effect determining the action and preventing a judgment? If the facts set up in the answer and cross-petition of Essie J. Weisberg are such as show a substantial right to the relief prayed for, and the order of the court denying her right to intervene determines the action, in that she will be prevented from obtaining a judgment for such relief unless she be allowed to intervene in the foreclosure proceeding, then it must be held that the order of the Common Pleas Court denying intervention in the action is a final order. To a determination of the question, we refer to the provisions of the General Code relating to parties to actions.

Section 11255, General Code, provides:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of a question involved therein."

This section contemplates that one, sought to be made a defendant, shall have an interest adverse to the plaintiff, or shall be a person who is a necessary party to a complete determination or settlement of a question involved therein. It will be noted that the answer tendered by the appellant in the Common Pleas Court does not question the validity of the bonds or mortgage which are the subject of the action and, hence, appellant does not claim an interest adverse to the plaintiffs; nor can it be said that the stockholders of The Newton Steel Company or any of them are necessary parties to a complete determination or settlement of the question involved in the action.

Section 11263, General Code, provides:

"In an action for the recovery of real or personal

property, a person claiming an interest in the property, on his application, may be made a party."

The language of this section conforms to the equitable rule formerly prevailing in chancery and confers upon the trial court the exercise of a sound discretion in determining whether the overruling of a motion to intervene will affect a substantial right and in effect determine the action and prevent a judgment favorable to a person seeking to intervene. It would, therefore, appear that the motion to dismiss the appeal should be overruled and the cause heard solely upon the question whether the trial court abused its discretion in overruling the motion of appellant to intervene. Has the order of the trial court overruling appellant's motion affected a substantial right which appellant has in this action and, if so, does such order in effect determine the action and prevent a judgment in favor of appellant?

It will be noted that The Newton Steel Company filed its answer in this cause praying that it be permitted to make a showing under Section 11588, General Code (the Best Act), whereby the sale of the mortgaged premises might be deferred in the discretion of the trial court and upon the conditions set forth in the act. This was a part of the relief sought by the appellant. The trial court, in the exercise of the sound discretion reposed, might properly find that there was no necessity for allowing a stockholder to intervene for the purpose of obtaining the relief provided in Section 11588, General Code, and in the absence of a bill of exceptions we are unable to determine that the trial court abused its discretion in this respect. We are told in argument upon both sides that the court had a full hearing upon the application of The Newton Steel Company to defer sale of the mortgaged premises upon the conditions set forth in the Best Act and found that the company was unable to comply with the conditions of the act; but this matter

is not before this court except that we may assume the court properly determined the right to have the sale deferred since the answer of The Newton Steel Company made request therefor.

It may be further noted from the answer and cross-petition tendered by the appellant that the present owner of the bonds secured by the mortgage sought to be foreclosed had no interest therein until after The Newton Steel Company had defaulted in payment of these bonds; nor did the owner of these bonds own any stock in The Newton Steel Company at the time of the issuance of these bonds or at the date when the payment of the same became in default. It is the claim of appellant that the Republic Steel Company, being the owner of the bonds secured by deed of trust or mortgage, is the real party in interest as plaintiff in the action; but, in view of the fact, as alleged in the tendered answer and cross-petition, that the Republic Steel Company acquired these bonds after they became due and acquired its stock ownership after the bonds were in default, it seems clear that the Republic Steel Company was not a party to any fraud or misconduct as alleged in the tendered answer and cross-petition, whereby The Newton Steel Company so transacted its business at a loss with the result that it became unable to pay its indebtedness.

Corrigan, McKinney Steel Company is not a party to the action; nor is it alleged that this company ever owned any of the bonds of The Newton Steel Company, so it is apparent that any right of action which the appellant, as a stockholder on her own behalf and on the behalf of other stockholders of The Newton Steel Company, has against Corrigan, McKinney Steel Company is in no way affected by the determination of the present action and the order of the Common Pleas Court in overruling appellant's motion could not have the effect of preventing a judgment against Corrigan, McKinney Steel Company or

against any of the officers and directors thereof who may have conspired to so operate the affairs of The Newton Steel Company that it sustained the losses claimed. It is difficult to see from the allegations of the tendered answer and cross-petition where anything is alleged therein which would constitute a cause of action against the Republic Steel Company. Indeed, these allegations would tend to show that the Republic Steel Company by its purchase of the defaulted bonds and its delay in enforcing collection by way of foreclosure was acting in the interest of The Newton Steel Company and its stockholders in that its property was not thrown upon the market during the depth of the depression, and any sale which may be ordered under the prayer for foreclosure will necessarily be made subsequent to this date when it is apparent that so far as the steel industry is concerned the depression has ended. Had the Republic Steel Company instituted this foreclosure proceeding immediately upon acquiring the bonds of The Newton Steel Company, it is clear that Republic Steel Company could not be chargeable with having had any part in the mismanagement of The Newton Steel Company or in bringing about its financial difficulties; nor would the appellant then have been in any position to have alleged fraud or misconduct upon the part of Republic Steel Company, its officers or directors. Had Republic Steel Company instituted foreclosure proceedings immediately upon acquiring the defaulted bonds of The Newton Steel Company and had appellant then asked for the appointment of a receiver, it would have rested in the sound discretion of the trial court whether a receiver would have then been appointed. The appointment of a receiver in foreclosure proceedings has always been a matter within the sound discretion of the court.

Financial statements of The Newton Steel Company are attached to the tendered answer and cross-petition and much is claimed for the fact that these statements

indicate that the assets of The Newton Steel Company exceed its liabilities in the amount of about $5,000,000. It is a matter too well known to warrant comment that financial statements of the character of those attached to the tendered answer and cross-petition gave no indication during the recent depression of the ability of the company to refinance its obligations or to dispose of its assets for the purpose of paying its indebtedness. The trial court was warranted in assuming that any receiver appointed by it would be unable, under the adverse conditions theretofore prevailing in the steel business, to so manage the affairs of The Newton Steel Company as to make a profit upon the operation of its manufacturing plants and business. It would be quite apparent to the trial court that the taxes accruing upon property which it carried upon its own books at a valuation of about $11,000,000 would call for the expenditure of many thousands of dollars, and that the accruing interest on its bonds would amount to approximately $20,000 per month. Under the holdings of this court a receiver would have been required to first pay the taxes out of any moneys coming into the hands of such receiver in preference to all other claims for the operation of the company's business, rendering it unlikely that anyone would extend further credit for funds with which to operate the business of the company, and on the whole it would appear that in the exercise of a sound discretion the trial court would find that the prayer of appellant's cross-petition for the appointment of a receiver would not have been in the interest of The Newton Steel Company or its stockholders and would have been prejudicial to the rights of the bondholders.

It seems apparent that the prayer of the tendered answer and cross-petition of appellant for the appointment of a receiver, as well as the prayer for writ of mandamus to compel the directors of The Newton Steel Company to make avail of Section 77b of the

National Bankruptcy Act (Title 11, Section 207, U. S. Code), would have been for the sole purpose of delaying payment of the amount due on its bonds without any assurance, from facts alleged in the tendered answer and cross-petition, that the company would be able to re-establish itself under the bankruptcy act or be able to obtain any higher price upon the sale of its property by a receiver appointed by the court.

The tendered answer and cross-petition unwarrantedly assumes that the Republic Steel Company will purchase The Newton Steel Company's property at foreclosure, whereas the trial court would, undoubtedly, take into consideration the fact that this property, after order of foreclosure, would be appraised, advertised and offered for sale pursuant to the provisions of the General Code in that behalf. It seems apparent that if Republic Steel Company should not purchase the property at sale upon foreclosure, no minority stockholder could be benefited by the granting of the relief prayed for to the effect that the court declare and decree that the purchase by the Republic Steel Company of the bonds of The Newton Steel Company be impressed with a trust and the Republic Steel Company declared a trustee of such bonds, as no owner of these bonds, whether a minority stockholder of The Newton Steel Company, individually or as trustee, could receive more than the amount due upon the bonds.

It further seems apparent that if it should develop in the future that Republic Steel Company would acquire The Newton Steel Company's property at the sale in foreclosure, the minority stockholders would not, by the overruling of the motion to intervene, be deprived of any action, which these minority stockholders might have, to have Republic Steel Company declared a trustee for the other shareholders of The Newton Steel Company as prayed for in the tendered answer and cross-petition. But we do not mean to

convey the thought that we have any notion that such relief could ever be granted, but only that the overruling of the motion in this case would not prevent a judgment declaring the majority stockholder a trustee for all the stockholders in the event it should purchase the mortgaged property at foreclosure, and in the event the minority stockholders would be entitled to such relief.

It seems clear that the trial court did not abuse its discretion in overruling the motion to intervene for the purpose of permitting the minority stockholders to litigate about some circumstance or condition which might never come to pass, but might properly leave the minority stockholders to any separate action which future developments might justify. "Sufficient unto the day is the evil thereof."

In determining whether the trial court abused its discretion in overruling the motion to intervene, we have considered not only the tendered answer and cross-petition but the motion of appellant and affidavits in support thereof, and in arriving at our conclusions we have conceded that the allegations of the tendered answer and cross-petition are *prima facie* true, although we have found it unnecessary to determine in this action whether the trial court, by its journal of November 6, 1936, has, or could have, permitted the filing of these papers for the consideration of this court on appeal, so as to make the facts stated in these papers evidence for the consideration of this court in the absence of a bill of exceptions.

We find and hold that the trial court committed no error prejudicial to the rights of the appellant in overruling her motion to intervene in this action, and the judgment of the trial court is, therefore, affirmed.

*Judgment affirmed.*

ROBERTS, P. J., and CARTER, J., concur.